969 So.2d 1079 (2007)
Mary Anne SAADEH and Anwar Saadeh, Petitioners,
v.
CITY OF JACKSONVILLE and Stanton Rowing Foundation, Respondents.
No. 1D07-0584.
District Court of Appeal of Florida, First District.
October 24, 2007.
Rehearing Denied December 5, 2007.
*1080 Barry A. Bobek, of Barry A. Bobek, P.A., Jacksonville, for Appellants.
Stephen H. Durant, of Durant & Schoeppell, P.A., Jacksonville; Richard A. Mullaney, General Counsel, and Tracey I. Arpen, Jr., Deputy General Counsel, City of Jacksonville, Jacksonville, for Appellees.
PER CURIAM.
Petitioners Mary Anne and Anwar Saadeh bring this second-tier petition for writ of certiorari, arguing the circuit court departed from the essential requirements of law in denying their challenge to the City of Jacksonville's adoption of Ordinance 2005-487-E, rezoning certain residential property on the Arlington River. Because we find Ordinance 2005-487-E is inconsistent with the City of Jacksonville's 2010 Comprehensive Plan, we grant certiorari, quash the circuit court's order, and remand with directions that the circuit court enter an order quashing Ordinance 2005-487-E.

*1081 I. Background

In May 1996, respondent, the Stanton Rowing Foundation, with financial support from respondent the City of Jacksonville, purchased two acres of property on the Arlington River in Jacksonville, Florida. It appears the City of Jacksonville originally intended to lease the property to Stanton, a competitive rowing club founded in association with the Stanton Preparatory High School, to operate a public rowing park. However, the City of Jacksonville has since formally cancelled its lease with the Stanton Foundation, such that Stanton now operates solely as a non-profit Florida corporation. The Foundation provides a space for Stanton students, as well as certain members of the qualified rowing public, to exercise, warm-up and launch boats, or shells, on the Arlington River. Petitioners, Mr. and Mrs. Saadeh, own several residential properties adjacent to, or in the same neighborhood as, the Stanton Foundation property.
Land use and development within the City of Jacksonville is currently guided by the City's 2010 Comprehensive Plan (the "Comprehensive Plan"). Pursuant to the Comprehensive Plan, the City is divided into one of several general land use categories, including residential, commercial or industrial areas. Each general category is further divided into subcategories. Thus, as it relates to this appeal, the residential category is divided into four subcategories: rural residential, low density residential, medium density residential, and high density residential. The Stanton Foundation's property is within a Low Density Residential (LDR) area. Each subcategory is in turn zoned according to its primary and secondary uses, with the secondary uses intended to support the various primary uses. The Stanton Foundation's property was zoned a Residential Low Density-D (RLD-D) District, a primary zoning district.
Since 1996, petitioners have filed a number of lawsuits against the Stanton Foundation seeking to curtail its operations in their neighborhood. In 2002, the Saadehs brought an action against the Stanton Foundation seeking to enjoin its continued use of the property as a private rowing club and to recover money damages, alleging that Stanton's use of the property constituted a private nuisance. Petitioners argued that the City of Jacksonville had recently amended the Jacksonville Ordinance Code to allow only "neighborhood parks, pocket parks, playgrounds, or recreational structures which serve or support a neighborhood or several adjacent neighborhoods" in a RLD-D district. In violation of this Ordinance, petitioners argued the Stanton Foundation operates its property as a "private club" for the exclusive benefit of Stanton Preparatory High School students. The Fourth Circuit granted summary judgment in favor of the Stanton Foundation, finding petitioners' suit barred by res judicata. Specifically, the court cited an earlier circuit court decision on a zoning violation, wherein it determined that Stanton's use of the property, pursuant to the City's lease arrangement, fit within the plain and ordinary meaning of a "park," and was therefore a permissible use of property in an RLD-D District.
On appeal, this court reversed the summary judgement. See Saadeh v. Stanton Rowing Found., Inc., 912 So.2d 28 (Fla. 1st DCA 2005). We noted that res judicata extends only to the facts and conditions as they existed at the time the prior court rendered its judgment. Indeed, since the previous zoning case, the City of Jacksonville had cancelled its lease with the Stanton Foundation, diminishing Stanton's status as a public park. Thus, we held Stanton's use of its property was *1082 more consistent with a private club. Id. at 31. Accordingly, this court remanded the case to the circuit court for further proceedings.
While petitioners' appeal was pending in this court, the Stanton Foundation initiated proceedings to rezone the property. Stanton ultimately sought to rezone its property as a Planned Unit Development (PUD) District, so that it could construct a boathouse to house its shells, as well as certain exercise equipment, currently stored outdoors.[1] On July 14, 2005, the City Planning Commission voted to recommend approving the application for rezoning, subject to the following conditions: (a) that the footprint of the proposed boathouse not exceed 75 feet by 75 feet; (b) that the boathouse not exceed 35 feet in height, (c) that the boathouse shall be set back at least ten feet from its property boundaries, and (d) that the boathouse shall be built to accommodate no more than fifty shells, or seats for 137 rowers. On July 19, 2005, the Land Use and Zoning Committee approved the application for rezoning, subject to the above conditions. Accordingly, the rezoning was adopted by City Ordinance 2005-487-E, on August 22, 2005.
Subsequently, petitioners filed a Petition for Writ of Certiorari in the Fourth Judicial Circuit Court for Duval County. Petitioners raised two arguments below. First, that the City violated their procedural due process rights in failing to provide sufficient notice. Second, petitioners argued that Ordinance 2005-487-E was inconsistent with the 2010 Comprehensive Plan, and thus the City's approval of the Ordinance was a departure from the essential requirements of law. On November 14, 2006, the circuit court denied the petition. Petitioners filed a Motion for Rehearing, which the court denied on December 27, 2006. Accordingly, petitioners have brought the instant certiorari petition.

II. Analysis

Petitioners seek second-tier certiorari review of the Jacksonville City Council's approval and adoption of Ordinance 2005-487-E. When a zoning board rules on an application for rezoning, the parties may twice seek review in the court system. First, a party may, as a matter of right, seek certiorari review at the circuit court level. See Florida Power & Light Co. v. City of Dania, 761 So.2d 1089, 1092 (Fla.2000). On "first-tier" review, the circuit court must determine "(1) whether procedural due process is accorded, (2) whether the essential requirements of the law have been observed, and (3) whether the administrative findings and judgment are supported by competent substantial evidence." Miami-Dade County v. Omnipoint Holdings, Inc., 863 So.2d 195, 199 (Fla.2003) (internal citations omitted). Next, the parties may seek "second tier" review of the circuit court's decision by petitioning for review in the district court. "The scope of the district court's review on second-tier certiorari is limited to whether the circuit court (1) afforded procedural due process, and (2) applied the correct law. In other words, this two-pronged, second-tier review is simply another way of deciding whether the lower court `departed from the essential requirements of *1083 law.'" Id. (internal citations omitted). We also note:
The test in reviewing a challenge to a zoning action on grounds that a proposed project is inconsistent with the comprehensive land use plan is whether the zoning authority's determination that a proposed development conforms to each element and the objectives of the land use plan is supported by competent and substantial evidence. The traditional and non-deferential standard of strict judicial scrutiny applies.
Dixon v. City of Jacksonville, 774 So.2d 763, 764 (Fla. 1st DCA 2000).
Petitioners assert that the circuit court departed from the essential requirements of law in denying their certiorari petition below. They contend Ordinance 2005-487-E is inconsistent with the City of Jacksonville's 2010 Comprehensive Plan and the City's Land Use Regulations. We agree with petitioners, to the extent they argue Ordinance 2005-487-E does not comply with the Comprehensive Plan. Specifically, we conclude that the Comprehensive Plan does not permit the operation of a private club, such as the one operated by the Stanton Foundation, within the LDR land use subcategory, under any of the primary or permissible secondary uses.
Initially, we hold that the Stanton Foundation's use of the property is essentially as a private club, rather than as a public park or recreation facility. In our earlier decision in this case, Saadeh v. Stanton Rowing Found., Inc., 912 So.2d 28 (Fla. 1st DCA 2005), we rejected Stanton's contention that, even after the City of Jacksonville cancelled its lease, it continued to operate a public park. Without dispute, the original lease arrangement between Stanton and the City provided that qualified members of the public could use the Stanton property for rowing and related activities, supporting the conclusion that the property was, in effect, a public park. However, with the cancellation of the lease, we noted these observations pale. Id. at. 31. Similarly, we also rejected Stanton's contention that its use of the property as a private recreational facility nonetheless met the zoning ordinance:
Although the zoning ordinance in question refers to "parks, playgrounds, and playfields," and does not specifically use the term "public park," we find that Stanton's definition is so broad as to render the referenced term "parks" meaningless. We further note that the Jacksonville Ordinance Code makes provision for private clubs, which are defined, in part, as facilities "owned or operated by a corporation, association, or persons for social, educational, or recreational purpose." Jacksonville Ordinance Code, § 656.1601. Because the Code contains this separate provision, we have determined that use by Stanton of its property as a private recreational area is not consistent with the RLD requirement of "parks, playgrounds and playfields."
Id. at 31.
Respondents urge that our prior holding in Saadeh does not control this case, because the City of Jacksonville has since defined "parks" to include a much broader range of facilities and uses. Indeed, they contend that the new definition makes no distinction between public and private ownership and thus, they suggest, is intended to incorporate both. We disagree. While, at the time of our decision in Saadeh, the Jacksonville Ordinance Code did not include a definition of "park," the Code now defines that term as "an area designed to include a combination of passive recreation . . . as well as active recreation . . . attracting visitors from the community and beyond a one-mile radius." See Jacksonville Ordinance Code, § 656.1601. *1084 Nonetheless, this new definition is substantially the same as the plain and ordinary meaning of the word "park" as we previously defined it, that is, "an area used for recreation and amusement." Furthermore, the Ordinance Code also continues to separately define a "private club" as "buildings or facilities owned or operated by a corporation, association, or persons for a social, educational, or recreational purpose." See Jacksonville Ordinance Code, § 656.1601. The Stanton Foundation falls squarely within this definition. Thus, despite the newly amended definition of the term "park," we continue to agree with our previous ruling, that Stanton's interpretation of the Ordinance Code and its definitions "is so broad as to render the referenced term `parks' meaningless." Saadeh, 912 So.2d at 31. We conclude that Stanton's use of the property is as a private club, rather than as a public park.
Turning to the Comprehensive Plan, the Stanton Foundation's property is designated LDR, and as such is intended as a primarily residential area, permitting housing developments and single family residences in a gross density range of up to seven dwelling units per acre. See Jacksonville Ordinance Code, § 656.305. Pursuant to, and consistent with, the Comprehensive Plan, Jacksonville's Land Use Regulations permit a number of primary uses, as well as "uses by exception" within the LDR category. Notably, the LDR category does not permit the operation of a private club, either as primary use or as a use by exception. In contrast, a private club is expressly included as a permissible use by exception within the Medium and High Density Residential (MDR, HDR) land use categories. See Jacksonville Ordinance Code, § 656.306(A)(II)(c)(9); § 656.307(A)(II)(c)(6).
This court has previously rejected attempts to rezone property where the intended use is not permitted in the Comprehensive Plan, either specifically or by reasonable implication. In Dixon v. City of Jacksonville, 774 So.2d 763, we reversed a circuit court order affirming a Jacksonville City ordinance to rezone certain commercial property as a PUD district, because the proposed use was not permitted in the Comprehensive Plan. In that case, the appellant sought a temporary injunction to enjoin the city from enforcing a zoning ordinance, which would rezone certain property adjacent to the appellant's property from a commercial office district, within the mixed residential/professional/institutional (RPI) category, to a PUD District, in order to allow the construction of a hotel on the property. Id. at 764. We noted, "[n]owhere is the use of a hotel mentioned within the RPI classification, either specifically, or by reasonable implication." Id. at 765. Thus, the court held, "[w]e therefore conclude, from our examination of the various uses within the RPI subcategory, both primary and secondary, that the planned development of a hotel cannot qualify as any type of permissible use. Accordingly, the traditional maxim of construction, expressio unius est exclusio alterius, appears altogether applicable." Id. at 766. Similarly, in this case, we conclude that the City's decision to include private clubs within the MDR and HDR land use categories implies the exclusion of that use within the LDR category.
Respondents also assert that, although a private club is not a permissible primary use, the LDR land use category does allow development of certain secondary uses, including a PUD District. Indeed, the Ordinance Code does permit PUD Districts, designed or intended to "create living environments that are responsive to the needs of their inhabitants; to provide flexibility in planning, design and development; [and] to encourage innovative *1085 approaches to the design of community environments. . . ." See Jacksonville Ordinance Code, § 656.340. However, the Ordinance Code, also provides, "[i]t is not the intent to utilize the Planned Unit Development district solely to diminish the usual application of the provisions of the Zoning Code." Id. Moreover, in developing a PUD District, the Ordinance Code requires the City to consider whether the proposed rezoning is consistent with the Comprehensive Plan, and whether the land uses within the proposed PUD District are consistent or compatible with the existing and planned uses of the surrounding property. See Jacksonville Ordinance Code, § 656.341(d)(1), (5). Accordingly, the Ordinance Code does not permit a property owner to pursue development, through a PUD District, that is inconsistent with the types of uses generally allowed in the land use category.
Therefore, we hold that the Stanton Foundation is currently operating a private club on its property on the Arlington River, and that such use is not permitted in the Comprehensive Plan, either as a primary or secondary use. We reject petitioners' remaining arguments without comment. Accordingly, we GRANT certiorari, QUASH the circuit court's order, and REMAND with directions that the circuit court enter an order quashing Ordinance 2005-487-E.
BROWNING, C.J., WOLF, and POLSTON, JJ., concur.
NOTES
[1] Initially, the Stanton Foundation sought to rezone their property as a Conservation (CSV) District. However, petitioners, as well as several members of the City Land Use and Zoning Committee, expressed concern that the CSV District would place significantly few restrictions on the size and capacity boathouse the Stanton Foundation could build. Accordingly, the application for rezoning was resubmitted as an application to rezone to a PUD District.